**Illuminada S. Vda de VENTIGAN, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 94–699.

United States Court of Veterans Appeals.

March 28, 1996.

Illuminada S. Vda de Ventigan, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and R. Randall Campbell, Deputy Assistant General Counsel, were on the brief, for appellee.

Before MANKIN, HOLDAWAY, and IVERS, Judges.

HOLDAWAY, Judge:

The appellant, the widow of veteran Benjamin Ventigan, appeals from a November 9, 1993, decision of the Board of Veterans' Appeals (BVA or Board) that denied restoration of service connection for the veteran's cause of death. The Board concluded that there was "no reasonable or tenable basis" for the July 1989 grant of service connection and that the grant was clearly and unmistakably erroneous. Record (R.) at 13. The Court

has jurisdiction over this matter under 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the Board's decision.

## I. FACTUAL BACKGROUND

The veteran had active service with the "New" Philippine Scouts from July 1946 to August 1949. R. at 35. The veteran's service medical records note treatment for pulmonary tuberculosis (PTB). R. at 26–31, 38–52. In May 1950, the veteran was granted service connection for his PTB disorder. VA physicians declared the veteran's PTB inactive in October 1985. R. at 138.

On October 27, 1988, the veteran died, and the appellant subsequently filed a claim for dependency and indemnity compensation. R. at 152. The appellant submitted a death certificate in which Dr. Arnulfo Estrada identified himself as the attending physician and noted that the veteran died of PTB. R. at 164. On March 7, 1989, VA conducted a field examination to verify the appellant's claim. R. at 169. In a deposition, the appellant testified that the veteran died at home and was attended by Dr. Estrada. R. at 172–73. Dr. Estrada told the field examiner that he did not perform a diagnostic procedure or an autopsy on the veteran. He also testified that based on what the appellant had told him, he was "almost completely sure that the cause of death was PTB." R. at 178. A July 1989 rating decision established service connection for the veteran's cause of death. R. at 183.

In August 1990, an unidentified individual submitted to VA an authentic copy of the veteran's death certificate which listed cardiogenic shock as the immediate cause of death and acute myocardial infarction as the antecedent cause. R. at 198. The certificate also reflected that contrary to the appellant's previous assertions, the veteran did not die at home, but rather at a municipal hospital in Dagupan City, Philippines. In addition, the certificate listed a Dr. Siapno as the attending physician and not Dr. Estrada.

Another field investigation was conducted in November 1990. R. at 201. During the course of the investigation, the appellant ad-

mitted to the field examiner that she had lied in 1989 and that Dr. Estrada had not been the veteran's attending physician. R. at 205. The appellant responded affirmatively when asked whether she "willfully and intentionally submitted the fraudulent death certificate ... to receive death benefits." R. at 204–05. VA then completed a search for the veteran's hospital records. R. at 209. The RO proposed to sever service connection in April 1991. R. at 216. In response to the RO's recommendation, the appellant, a lay person, stated that the veteran had suffered from PTB for many years, and that the condition could have triggered cardiac arrest. The appellant also stated that her previous statements that her husband had died of PTB were made in "good faith." R. at 220–37. Notwithstanding the appellant's explanation for her actions, the RO severed service connection in July 1991.

## II. ANALYSIS

■ The BVA, in the decision now on appeal, found that the grant of service connection was clearly and unmistakably erroneous and that severance of service connection was proper under 38 C.F.R. § 3.105 (1995). Section 3.105 provides, however, that "[t]he provisions of this section apply *except* where an award was based on an act of commission or omission by the payee, or with his or her knowledge (§ 3.500(b))." (Emphasis added.) In this instance, the grant of service connection for the veteran's cause of death was based on the submission of a patently false death certificate by the appellant (payee). The appellant's action clearly precludes the application of section 3.105, as the award of service connection was based on an act of commission by the appellant. Thus, the BVA incorrectly severed service connection on the basis of clear and unmistakable error. However, its action in severing service connection was legally correct and where, as in this case, all of the facts were developed and were before the Board, the error was harmless. *See* 38 U.S.C. § 7261(b); *Gabrielson v. Brown,* 7 Vet.App. 36 (1994).

■ The Board should have applied 38 U.S.C. § 5112(b)(9), which states that "the effective date of a reduction or discontinu-

ance of compensation, dependency and indemnity compensation, or pension by reason of an erroneous award based on an act of commission or omission by the beneficiary, or with the beneficiary's knowledge, shall be the effective date of the award." *See also* 38 C.F.R. § 3.500(b) (1995). In this instance, the award of service connection for cause of death was erroneous because it was based on the false death certificate, knowingly submitted by the appellant, which incorrectly noted PTB as the cause of death. Before discontinuing the award of service connection, the Board did consider the appellant's lay evidence to the effect that the PTB "could have" triggered the cardiac arrest. The Board rejected the appellant's lay evidence as an insufficient basis upon which to base an award.

■ The Board's determination is a finding of fact which this Court reviews under a "clearly erroneous" standard of review. *Turner v. Brown,* 6 Vet.App. 256, 258 (1994); *Ashley v. Brown,* 6 Vet.App. 52, 56 (1993); *Gilbert v. Derwinski,* 1 Vet.App. 49, 52–53 (1990). Under this standard, if there is a plausible basis in the record for the factual determinations of the BVA, the Court cannot overturn them even if this Court might not have reached the same conclusions. *Turner,* 6 Vet.App. at 258; *Ashley,* 6 Vet.App. at 56; *Gilbert,* 1 Vet.App. at 53. Pursuant to 38 C.F.R. § 3.312(c)(1) (1995), when considering whether a condition was a contributory cause of death, "it is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection." *See Wray v. Brown,* 7 Vet.App. 488 (1995); *Utendahl v. Derwinski,* 1 Vet. App. 530 (1991). The record on appeal reflects that the veteran's PTB was declared inactive since 1985 and that no complications from the disorder were reported in the years thereafter. Furthermore, none of the medical evidence notes a causal connection between the veteran's PTB and his cause of death.

Although the BVA mistakenly cited to section 3.105, the BVA did undertake a thorough and complete review of the evidence of record and determined that it does not provide any tenable basis to conclude that the appellant's PTB was the immediate or sec-

ondary cause of death or that it substantially or materially contributed to the same. The Board's finding that the appellant is not entitled to restoration of service connection for the cause of the veteran's death has a plausible basis and thus is not clearly erroneous. *See Ashley,* 6 Vet.App. at 59 ("It is not the function of this Court to speculate on the relationship between any service-connected disabilities ... and his or her death; rather, it is function of this Court to decide whether the Board's factual determinations on the issue constitute clear error."); *Shoemaker v. Derwinski,* 3 Vet.App. 248, 254 (1992).

### III. CONCLUSION

Accordingly, the BVA's decision is AFFIRMED.